## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| | ) | |
| *Plaintiff,* | ) | **Civil Action No:** |
| | ) | |
| v. | ) | |
| | ) | **Judge** |
| **William Lee, Governor of the State** | ) | |
| **of Tennessee, in his official capacity;** | ) | |
| | ) | **Magistrate Judge** |
| **And,** | ) | |
| | ) | |
| **David Rausch, Director of the Tennessee** | ) | |
| **Bureau of Investigation, in his official** | ) | |
| **capacity;** | ) | |
| | ) | |
| *Defendants.* | ) | |

## COMPLAINT

1. Plaintiff John Doe[1] brings this 42 U.S.C. § 1983 action alleging that Defendants have violated, and continue to violate, Plaintiff's Constitutional right against *ex post facto* punishment through retroactive imposition on him of Tennessee's sex offender restrictions and monitoring requirements. Plaintiff seeks declaratory and injunctive relief against the Defendants.

## PARTIES

2. Plaintiff John Doe is an adult resident of Rutherford County, Tennessee.

3. Defendant William Lee is the Governor of the State of Tennessee.

---

[1] Plaintiff will be filing a motion to proceed under pseudonym and for protective order shortly after filing this complaint.

4. Defendant David Rausch is the Director of the Tennessee Bureau of Investigation, a state agency with a primary enforcement role in Tennessee's sex offender registration scheme.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. Venue lies in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are state officials whose offices are located in this district.

## FACTUAL BACKGROUND

### A. Plaintiff's Background

6. Plaintiff is a fifty-four-year-old married man.

7. Plaintiff is required under Tennessee law to be registered on Tennessee's Sex Offender Registry (T.C.A. § 40-39-201 et seq.) due solely to a conviction for a case involving a sex offense that occurred in the year 2000.

8. Solely due to Plaintiff's 2000 offense, Tennessee law declares him "Violent Against Children" in perpetuity, and subjects him to lifetime registration on the sex offender registry and a host of restrictions, obligations, and punishments.

9. The bulk of Tennessee's sex offender registration, monitoring, and enforcement laws were passed after Plaintiff committed his qualifying offenses.

### B. Tennessee's Sex Offender Registration and Monitoring Regime

10. In 1994, Tennessee passed its first ever sex offender registry law. However, this law required only that offenders register in a private law enforcement database.

11. Tennessee continued expanding the registry laws through the nineties, increasing reporting requirements and, eventually, making sex offender registrations public for those who had committed their offenses after July 1, 1997.

2

12. Tennessee continued periodically passing laws expanding its sex offender registration and monitoring regime, until in 2004 Tennessee passed sweeping new restrictions on convicted sex offenders hereinafter referred to as "SORA."

13. SORA imposed stringent registration and reporting requirements on statutorily defined "sexual offenders," "violent sexual offenders," and "offenders against children," and severely limited where sex offenders could live, work, and go.

14. SORA applied retroactively to past offenders, imposing its labels, restrictions, obligations, and punishments even where an offender's only qualifying offenses had occurred prior to SORA's enactment.

15. In the years since 2004, Tennessee has periodically enacted amendments to SORA, almost all of which have made it even more draconian, intrusive, and punitive.

16. Under present law,[2] Tennessee's SORA regime requires the following affirmative obligations from Plaintiff, on pain of criminal prosecution:

    a. Quarterly registration with local law enforcement;

    b. Payment of annual registration and monitoring fees;

    c. Re-registration within forty-eight hours if Plaintiff relocates to a new municipality or county, even on a temporary basis for work or school;

    d. When in public, <u>always</u> carry his state-issued identification with him, which must have a sex offender designation on it.

17. Tennessee's SORA regime includes a "Tennessee Sex Offender Registry" website maintained by the Tennessee Bureau of Investigation ("TBI"), which makes the following information about Plaintiff public:

---

[2] T.C.A. § 40-39-201 *et seq*.

a. Name

b. Classification of "VIOLENT AGAINST CHILDREN"

c. Status of "ACTIVE"

d. Date of birth

e. Full criminal history

f. Residential address

g. Race and gender

h. Last date of information verification

i. Most recent photograph submitted to TBI

j. Driver's license and/or state identification number

k. Physical description including height, weight, eye color, hair color, tattoos, scars, and marks

l. Criminal history, including the date of all arrests and convictions, probation and/or parole status, and the existence of any outstanding warrants

m. Address of Plaintiff's employer(s)

n. License plate number and description of Plaintiff's vehicle(s)

18. SORA prohibits Plaintiff from the following, on pain of felony criminal prosecution:

a. Working or residing within 1000' of a school, day care center, other child care facility, public park, playground, recreation center, or public athletic field;

b. Residing within 1000' feet of the victims from Plaintiff's criminal case, or any of the victims' family members; coming within 100' of the victims; or, contacting the victims without their consent.

4

c. Any of the following, unless picking up or dropping off his own child at school after giving written notice of his sex offender status to the school's principal, or attending a conference with officials at a school, day care, child care, recreation center, or playground with written permission from the administrator:

   i. Entering the premises of any school, day care center, other childcare facility, public park, playground, recreation center, or public athletic field when there is reason to believe that children may be present;

   ii. "Stand[ing], sit[ting] idly, or remain[ing]" within 1000' feet of any school, day care center, other child care facility, public park, playground, recreation center, or public athletic field "while not having a reason or relationship involving custody of or responsibility for a child or any other specific or legitimate reason for being there;"

   iii. Being within any vehicle owned, leased, or contracted by a school, day care, childcare, or recreation center when children under 18 years of age are present;

d. Residing with two or more other convicted sex offenders;

e. Being alone with a minor in a "private area."

f. Residing with, or having an overnight visit in, a place in which a minor is present.

19. SORA authorizes the following additional optional punishments against Plaintiff:

a. Public libraries may ban Plaintiff from their premises;

b. Municipalities may implement a "community notification system" to alert members of the public should Plaintiff indicate his intention to move there;

5

c. A municipality where Plaintiff resides may charge Plaintiff up to $50 per year toward the cost of its community notification system.

### C. Specific Impacts of SORA on Plaintiff

20. SORA's impositions, detailed at ¶¶ 16 – 19, have substantially interfered with Plaintiff's career, family, reputation, and overall enjoyment of life and will continue to substantially interfere so long as Plaintiff is subject to them.

21. Under current law, Plaintiff will continue to be subjected to these SORA impositions for the rest of his life.

22. SORA requires Plaintiff to report quarterly, and each time he reports he must sign his acknowledgment of the SORA rules. The rules are complex, and each time he reports it seems like there are new rules in place. Consequently, Plaintiff routinely feels anxiety that he could be arrested because of a rule change that he is not even aware of.

23. Plaintiff has to pay the TBI registration fees of $150 a year.

24. Plaintiff cannot get a job in his career field (IT) due to his SOR status. Plaintiff has missed several opportunities including one with Amazon working in their IT due to the building having a nursery inside. This prevented Plaintiff from tripling his salary. Plaintiff has a job with Nissan, but his inability to travel overseas for the company and the "88 code" on Plaintiff's driver's license has hindered Plaintiff's ability to advance.

25. Plaintiff's registry status has been hard on his marriage. Plaintiff's wife has been ostracized from parts of her family due to SORA – for instance, Plaintiff's wife used to be close to her cousin, but her cousin will no longer have anything to do with her because of Plaintiff's registry status. Plaintiff's wife is also hesitant to make friends due to Plaintiff being on the registry and someone finding out, so she prefers to stay to herself.

6

26. Because of SORA, law enforcement periodically comes to search Plaintiff's home. This is invasive and humiliating, and causes further tension between Plaintiff and his wife – particularly because the officers typically search her property too.

27. Plaintiff's wife has a minor son from a prior relationship. This has been an extreme problem, because SORA prohibits Plaintiff from staying overnight in the same residence as his stepson. Thus, Plaintiff and his wife have had to maintain separate residences, and spend large amounts of time apart.

28. Plaintiff and his wife welcomed their own child into the world in November 2023. While this is a wonderful development, it significantly intensifies the already severe impact of SORA on Plaintiff's life and marriage. For instance, Plaintiff was prohibited from entering the hospital nursery to see his newborn child due to SORA, which in turn prevented him from connecting with his child during those precious first few days.

29. SORA also damages Plaintiff's marriage in more mundane ways – for instance, Plaintiff's wife was excited to manage to obtain Taylor Swift concert tickets, only to discover that Plaintiff could not take her to the concert due to SORA.

30. Besides Plaintiff and his wife's newborn child, Plaintiff has four other children, all adults, two of whom has minor children of their own. SORA interferes with Plaintiff's ability to be a good grandfather to these children.

31. SORA makes it very difficult for Plaintiff to develop good friendships with co-workers, because of the constant concern that someone might look Plaintiff up on the TBI website.

32. Plaintiff's registry status has made it impracticable to visit friends and family out of state or travel for work, because other states require that registered offenders who visit for more than 48 hours register while visiting there.

33. Plaintiff would like to obtain a passport that does not mark him as a sex offender. However, due to SORA and the "International Megan's Law,"[3] if Plaintiff obtains a passport it must mark him as a sex offender.

34. SORA also impacts Plaintiff's recreational life. Plaintiff would love to run on the greenways and also in parks instead of on the roads, as it would be safer for him and more enjoyable. Plaintiff would love to be able to attend a gym and use the treadmill without worrying about being on the registry.

35. Plaintiff would also like to be able to volunteer for things like Habitat for Humanity, but feels unable to because of his registry status.

36. Plaintiff's wife is prohibited from decorating the house for holidays due to SORA.

37. Plaintiff's driver's license is marked with an "88" sex offender code, which is embarrassing and can cause him to be denied entrance to places.

38. Plaintiff has had to pay higher car insurance rates, and at one point was denied car insurance due to being on the registry.

39. Plaintiff is concerned that "sex offender" may show on his credit report, causing a host of collateral financial impacts.

40. Plaintiff has had to provide the addresses for his nearby family members to law enforcement, which feels invasive given that they did not do anything to be subjected to this scrutiny.

41. Due to these and a host of other SORA impacts, Plaintiff seeks immediate relief from this illegal regime.

---

[3] 22 U.S.C. §212b (including in the definition of "covered sex offender" that one be presently required to register in any jurisdiction).

## CLAIMS FOR RELIEF

### COUNT I: EX POST FACTO VIOLATION IN
### VIOLATION OF ARTICLE I, § 10 OF THE U.S. CONSTITUTION
### (42 U.S.C § 1983)

### (ALL DEFENDANTS)

42. Plaintiff hereby reincorporates paragraphs 1 – 41 by reference.

43. As applied to Plaintiff, Tennessee's SORA regime constitutes "punishment" within the meaning of the *ex post facto* clause of Article I, § 10 of the U.S. Constitution.

44. Defendants Lee and Rausch are proper official capacity defendants because they both have roles in enforcing Tennessee's SORA regime.

45. Plaintiff is entitled to declaratory and injunctive relief prohibiting Defendants from continuing to enforce Tennessee's SORA regime on him in violation of his constitutional right against *ex post facto* punishment.

## REQUEST FOR RELIEF

**WHEREFORE**, these premises considered, Plaintiff prays:

1. That the Defendants Answer this Complaint within the time provided by law.

2. That the Court grant a preliminary injunction enjoining Defendants from enforcing Tennessee's SORA regime against Plaintiff solely on the basis of his 2000 offense.

3. That judgment for Plaintiff enter against the Defendants on each count.

4. That the judgment declare that it is unconstitutional for Tennessee to retroactively impose its SORA regime on Plaintiff solely on the basis of his 2000 offense.

5. That the judgment permanently enjoin Defendants from enforcing Tennessee's SORA restrictions against Plaintiff solely on the basis of his 2000 offense.

9

6. That Plaintiff be awarded his attorney's fees and reasonable litigation expenses, including expert witness fees, pursuant to 42 U.S.C. § 1988 and F.R. Civ. Pro. 54(d).

7. That the court costs in this matter be taxed to Defendants.

8. That Plaintiff be awarded all other relief to which it may appear he is entitled in the interests of justice.

Respectfully submitted,

*s/ Kyle Mothershead*
Kyle Mothershead, BPR 22953
Relentless Advocacy, PLLC
2901 Dobbs Ave
Nashville, TN 37211
T: (615) 429-4717 / F: (615) 229-6387
E: Kyle@relentlesslaw.com

10